# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA BELEN GUTIERREZ MONTEON,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>        Defendant. | NO. ED CV 16-1862-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

MARIA BELEN GUTIERREZ MONTEON ("Plaintiff") filed a Complaint on August 30, 2016, seeking review of the denial of her applications for a period of disability, disability insurance ("DI"), and supplemental security income ("SSI"). (Dkt. No. 1 ("Complaint").) On October 7, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On April 6, 2017, the parties filed a Joint Stipulation. (Dkt. No. 17 ("Joint Stip.")) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 13-14.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded

1

for further proceedings. (*See id.* at 14-15.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 17, 2013, Plaintiff, who was born on April 29, 1980, filed applications for a period of disability, DI, and SSI.[1] (*See* Administrative Record ("AR") 160-68.) Plaintiff alleged disability commencing July 17, 2009 due to tachycardia. (AR 162, 183.) Plaintiff previously worked as a dental assistant (DOT 079.361-018) (AR 44.) After the Commissioner denied Plaintiff's applications initially (AR 89-93) and on reconsideration (AR 97-101), Plaintiff requested a hearing. (AR 108.) Administrative Law Judge Paul Coulter ("ALJ") held a hearing on December 10, 2014. (AR 34.) Plaintiff, who was represented by counsel, testified before the ALJ, as did vocational expert ("VE") Harlan S. Stock. (*See* AR 35-46.) On January 9, 2015, the ALJ issued an unfavorable decision, denying Plaintiff's applications for DI and SSI. (AR 19-31.) On June 27, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her July 17, 2009 alleged onset date. The ALJ further found that Plaintiff had the following severe impairments: tachycardia, palpitations, arrhythmia, a left shoulder impairment causing pain, near syncope, vertigo, and obesity. (AR 24.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 39-40.) The ALJ

---

[1] Plaintiff was thirty-two years old on the application date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).

2

determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> [Plaintiff] can lift, carry, push or pull 50 pounds occasionally and 25 pounds frequently; stand/walk for 6 hours out of 8 and sit for about 6 hours out of 8. Postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling can be performed on an occasional basis. She should avoid ladders, ropes, or scaffolds, concentrated exposure to extreme cold and extreme heat, and even moderate exposure to hazards such as working at heights or around machinery.

(AR 25.)

The ALJ found that Plaintiff was capable of performing her past relevant work as a dental assistant. (AR 28.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges that the ALJ failed to properly evaluate the credibility of Plaintiff's subjective complaints. (Joint Stip. at 4.)

### I. **Plaintiff's Credibility**

#### A. **Plaintiff's Subjective Complaints**

The sole issue in dispute is whether the ALJ properly evaluated the credibility of Plaintiff's statements about her symptoms and limitations. (Joint Stip. at 4.) In her disability report, plaintiff said that she suffers "shortness of breath from any activities," and "ha[s] to take [her] time to do things." (AR 192.) She reported "get[ting] dizzy, nauseous, diarrhea" and sometimes passing out. (AR 192.) Plaintiff also took Atenolol for heart palpitations. (AR 241, 265.)

On February 17, 2012, Plaintiff had a consultation with Island Heart Vascular Medical Associates. She stated that she suffered palpations almost every night for one year. (AR 249.) Dr. Edward E. Abdullah, a staff electrophysiologist and her treating physician at the San Bernardino office of Los Angeles Cardiology Associates regularly treated Plaintiff. He stated that Plaintiff's "episodes can lead to dizziness and predispose her to syncope ('passing out'). Factors provoking a typical episode are caffeine and situational stress." (AR 263.) After testing, Dr. Abdullah concluded that Plaintiff suffered from symptomatic palpitations with documented evidence for SVT (Supraventricular Tachycardia)." (AR 265.)

On April 25, 2013, Plaintiff went to Victor Valley Community Hospital in Victorville, CA and complained of "dizziness for two days and [an] unwitnessed possible syncopal episode." (AR 327.) By July 31, 2013, Plaintiff reported to Dr. Abdullah that her palpitations increased in frequency to upwards of two episodes per month, lasting approximately five minutes in duration. (AR 270.) She was admitted overnight, but had no further issues and was discharged. (AR 349.) By February 27, 2014, Dr. Abdullah recorded that the frequency of Plaintiff's episodes had increased to three times per week. (AR 374.)

In Dr. Abdullah's Cardiac Arrhythmias Impairment Medical Assessment Form, dated July 25, 2013, he gave Plaintiff a "fair to good" prognosis. (AR 384.) He noted that her episodes typically occur several times per week. (*Id*.) After each episode, Plaintiff would

need to rest for one to two hours. (*Id.*) Her symptoms would only occasionally interfere with simple work tasks. (*Id.*) However, if in a competitive job, Plaintiff would be unable to perform routine, repetitive tasks at a consistent pace. (*Id.*) Plaintiff also could not perform detailed, complicated, or fast-paced tasks, and could not comply with strict deadlines. Plaintiff could never lift fifty pounds, rarely lift twenty pounds, occasionally lift ten pounds, and frequently lift less than ten pounds. (*See* AR 384-86.) Plaintiff could sit for at least six hours, but could only stand or walk for less than two hours during an eight-hour work day. (AR 395.) Dr. Abdullah also concluded that Plaintiff's cardiac symptoms were often "severe enough to interfere with attention and concentration." (AR 389.) On the same form, Dr. Abdullah indicated that he saw Plaintiff approximately four times between July of 2012 and July of 2013. (AR 387.)

The findings in the June 27, 2013 and October 7, 2013 analyses conducted by the State agency medical consultants were starkly different. On June 27, 2013, Dr. Homayoon Moghbeli concluded that Plaintiff could occasionally lift fifty pounds, frequently lift less twenty pounds, stand and/or walk about six hours in an eight-hour work day, sit for about six hours in an eight-hour workday, and push and/or pull. (AR 54.) The doctor determined that Plaintiff could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, frequently balance or stoop, and occasionally kneel and crouch. (*Id.*) The doctor also determined that Plaintiff's had the requisite RFC to perform her previous work as a dental assistant as it was actually performed. (*Id.* at 56.) Based on those findings, Dr. Moghbeli concluded that Plaintiff was "not disabled." (AR 52-56.) These findings mirror the RFC determination reached by consulting physician Dr. K. Beig in Plaintiff's October 7, 2013 RFC assessment. (R. 73-76.)

At the December 10, 2014 hearing, Plaintiff testified that she began suffering from tachycardia in 2009. (AR 38.) Plaintiff said that she could not sit for a long time without having back pain. (*Id.* at 39.) She could stand for around twenty minutes before feeling out

6

of breath, and could walk around the house, but not around the block. (*Id.*) She would experience symptoms approximately three times a week. Plaintiff also experienced constant pain in her lower back. She was planning to start physical therapy the following month for muscle spasms. (*Id.* at 39.) Plaintiff recently learned that she had stiffness in her neck that required acupuncture and could cause her to become hunchback if left untreated. (AR 36-40.) She also received injections in her arm to allow her to "carry the baby because [she] had] muscle spasms." (AR 41.) Her arrhythmia episodes caused Plaintiff to become "lightheaded, dizzy, [and] tired," requiring her to "take an hour-long nap" to recover. (AR 41.)

**B. Applicable Law**

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other

7

testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

### A. The ALJ's Credibility Determination

Plaintiff argues that the ALJ discussed the medical evidence without explaining which of Plaintiff's complaints were undermined by which evidence. (Joint Stip. 8.) She claims, "Because the ALJ did not articulate any reasons for finding [Plaintiff] not credible aside for the conclusion that her 'allegations are greater than expected in light of the objective evidence of record,' the credibility analysis necessarily fails." (Joint Stip. 8.)

In response, Defendant points to two grounds that the ALJ relied on in his credibility determination. First, Defendant argues that "[t]he credibility of Plaintiff's allegations regarding the severity of her symptoms and limitations was diminished because her allegations were greater than expected in light of the record." (Joint Stip. 11.) Further, Defendant contends that "Plaintiff did not seek the type of treatment one would expect for a disabled individual." (Joint Stip. 12.)

### a. The ALJ Discounted Plaintiff's Credibility Based on a Lack of Medical Records

8

The ALJ found that the "credibility of [Plaintiff]'s allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective medical record, which is remarkably sparse." (AR 26.) In assessing a claimant's credibility, the ALJ is permitted to consider "minimal objective evidence," among other factors. *Burch*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ may not categorically discredit subjective pain testimony merely because it is unsupported by objective medical findings. S*ee Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989). However, the ALJ may consider "the conflict between [the plaintiff's] testimony of subjective complaints and the objective medical record," and find that the latter does not support the former. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

In his analysis, the ALJ highlighted portions of the medical record that conflicted with Plaintiff's claim of total disability. For instance, the ALJ explained that, "with regard to the claimant's allegation of vertigo, on April 25, 2013, a CT of the brain was unremarkable." (AR 26; *see* AR 367.) The ALJ also noted that, in August of 2013, her palpitations were described as "'better and none since last seen.'" (AR 27, 245.) She was seen at Metropolitan Family Medical Clinic in October of 2011, but a chest ray was normal. (AR 236.) Dr. Edward Abdullah prescribed Atenolol to Plaintiff in August of 2013 after concluding that Plaintiff suffered symptomatic palpitations with documented evidence for superaventricular tachycardia. (AR 258.) She also received an echocardiogram in February of 2014. Plaintiff's left and right ventricular diameters and wall motions were normal. Her left atrium, aortic root, and cardiac valves were also normal. (AR 27, 383.)

The record evidence available does not show that Plaintiff's conditions rendered her totally disabled. This constitutes a specific and legitimate reasons, supported by substantial evidence in the record, for finding Plaintiff's statements of her subjective symptoms less

than fully credible. Thus, the ALJ was entitled to base his determination, in part, of the lack of available evidence in the record to support Plaintiff's claims.

### b. The ALJ Discounted Plaintiff's Credibility Based on Her Conservative Treatment

The ALJ also based his credibility analysis on Plaintiff's conservative course of treatment. The ALJ may "consider lack of treatment in his credibility determination." *Burch*, 400 F.3d at 681. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's favorable response to conservative treatment undermined his reports regarding the disabling nature of his pain).

Here, the ALJ summarized Plaintiff's statements, including allegations of tachycardia and vertigo, lower back pain, calling 911 "a lot," plans to start physical therapy, and injections for muscle spasms. (AR 26.) The ALJ then discussed Plaintiff's treatment history, and stated, "[Plaintiff] has not sought the type of treatment one would expect of a totally disabled individual. (AR 27.)

The ALJ's determination is without legal error. As the medical records indicated, during the duration of her period of disability, Plaintiff visited Dr. Edward Abdullah several times in 2013 (AR 257-59), Dr. Tyan Lee once in February of 2013 (AR 245), and Kaiser Permanente for a medication refill and a referral to physical therapy in April of 2013 (AR 26). Plaintiff also went to an urgent care clinic for dizziness and nausea, but was subsequently released after being observed overnight and having normal laboratory work, a normal echocardiogram, and "no further issues." (AR 327.) Based on this evidence, the ALJ correctly assessed that "what few treatment records are available consist of little more

10

than cardiac monitoring appointments." (AR 27.) Accordingly, the record supports the ALJ's finding that plaintiff's credibility was undermined by a conservative treatment routine.

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: September 28, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE